UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:17-cv-03755-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

On March 25, 2014, Michael Perez ("Plaintiff") filed an application for disability insurance benefits ("DIB") alleging disability commencing April 4, 2013. Administrative Record ("AR") 102-03. On September 8, 2015, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 31-46. Plaintiff was twenty-nine at the time of the hearing. AR 34.

On December 14, 2015, the ALJ issued a decision denying Plaintiff's DIB application. AR 17-30. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "status post lumbar spinal fusion

surgery in August 2013 with residual right radicular pain; and obesity." AR 22. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, as follows:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk 6 hours in an 8 hour workday. The claimant can sit 6 hours in an 8 hour day. The claimant can engage in climbing, balancing, stooping, kneeling, crouching, and crawling on an occasional basis.

AR 23, citing 20 C.F.R. § 404.1567.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work as a butcher or hand packager. AR 26. The ALJ found, however, that Plaintiff could work as a photocopy machine operator, marker, and mail clerk. Id. The ALJ concluded that Plaintiff was not disabled. AR 27.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly evaluated Plaintiff's subjective symptom testimony. (Dkt. 22, Joint Stipulation ["JS"] at 4.)

## IV.
## DISCUSSION

### A. Rules Governing the Evaluation of Subjective Symptom Testimony.

An ALJ's assessment of a claimant's testimony concerning his or her pain level is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citation omitted); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds that a claimant's testimony as to the severity of his or her pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial

evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

Here, the ALJ issued his decision in December 2015. At that time, Social Security Ruling ("SSR") 96-7p had not been superseded by SSR 16-3p (which superseded SSR 96-7p on March 28, 2016). The Court notes that the SSR changes appear immaterial to the ALJ's analysis in this case. Both SSRs note that, in assessing a claimant's subjective symptom testimony, ALJs should consider, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or

4

other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Compare SSR 96-7p, 1996 WL 374186, and SSR 16-3p, 2017 WL 5180304; see also 20 CFR § 404.1529 (effective to March 26, 2017, reflecting same factors); see also Clowser v. Berryhill, No. 16-2044, 2017 WL 5905506, at *3 (C.D. Cal. Nov. 30, 2017) ("When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision.").

## B. The ALJ's Evaluation of Plaintiff's Testimony.

Plaintiff stopped working in April 2013 and underwent multi-level lumbar spinal fusion surgery to address back pain in August 2013. AR 35-36, 38, 259. He initially experienced improvement, but "later on, the beginning of the year [i.e., January 2014], that's when everything sort of started intensifying on the right side" and he received an epidural injection on January 31, 2014. AR 38, 175-76. By the September 8, 2015 hearing, Plaintiff felt his pain was worse than it was in April 2013. AR 39.

Plaintiff testified that he spends 70 percent of each day lying down due to his pain. Id. He can lift no more than ten pounds, and he cannot bend down even halfway or pick up anything off the ground. AR 39-40. He can sit only for about seven minutes, and stand for no more than ten minutes at a time. AR 35. He can walk for about 60 to 70 feet. Id. He has never used an assistive device to help him walk. Id. He does not help with household chores or grocery shopping. Id. He can, however, drive; he drives his children to school, which take ten minutes. AR 34, 40.

In paperwork filed with the Social Security Administration, Plaintiff indicated that his condition worsened in February 2014 because he was "experiencing severe back spasms and pain down right leg." AR 132. Plaintiff also

completed a Pain Questionnaire dated April 16, 2014. AR 127-29. He reported that he began experiencing back pain at age 14, but it only started to affect his activities in January 2013.[1] AR 128. After his August 2013 surgery, by February 2014, he had "lower back" pain that "goes down [his] right leg." AR 127. His pain occurred "constantly" and lasted "all day," but "at times" resting relieved his pain after "about an hour and a half." Id. He took gabapentin and ibuprofen which relieved the pain after 45 minutes.[2] Id. As his daily activities, he identified, "some walking, some driving." AR 128. He indicated he could walk 30 yards, stand for 45 minutes, and sit for 30 minutes. AR 129.

Plaintiff underwent a consultative examination on April 23, 2014. He told the examiner that he could walk 20-30 minutes and lift "about 5 pounds from the

---

[1] Compare AR 206 (on 05/17/12, Plaintiff described his pain as 0/10); AR 211 (same on 06/20/12); AR 283 (on 04/04/13, reported "difficulty walking" due to back pain); AR 213-16 (on 06/03/13, reported back pain at pre-operative appointment, but pain still reported as 0/10; he received "physical activity counselling"); AR 222-23 (on 06/27/13, pain still described as 0/10, but he received gabapentin and ibuprofen).

[2] It is difficult to correlate Plaintiff's testimony about changes in his pain levels over time with his medical records because, as his attorney noted at the hearing, his primary care physician used a form that lists pain ratings on a scale of 0-10 as a vital sign, and the default rating was 0. AR 41-42. Recognizing that the pain scale data may be unreliable, those records (in chronological order) reflect the following: AR 229 (on 01/11/14 [before injection], pain described as 7/10); AR 235 (on 02/03/14 [after injection], pain described as 0/10; Plaintiff advised to "decrease time spent in sedentary activities and 30 min of aerobic exercise 5 days per week"); AR 237-38 (on 02/15/14, pain described as 0/10; Plaintiff visited doctor for flu shot); AR 241-42 (on 03/10/14, pain in feet and right leg described as 7/10; "reports pain after standing for 30 minutes"); AR 316-18 (on 05/01/14, back pain described as 7/10; Plaintiff stated "gabapentin is not helpful … requesting Norco"; doctor ordered "trial baclofen" and exercise); AR 323-24 (on 08/13/14, reported "pain medications generally help with symptoms; still has occasional breakthrough pain; would be interested in getting PT [physical therapy] again" and "walks one mile 3 days per week").

6

table." AR 198. The examiner described his gait as "normal." AR 200.

The ALJ found that while Plaintiff's back condition could reasonably be expected to cause pain, Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." AR 24. The ALJ gave several reasons for this finding: (1) lack of supporting medical evidence, (2) Plaintiff's "mild and conservative" treatment, (3) Plaintiff's inconsistent statements about the severity of his symptoms, and (4) Plaintiff's "vague and general" description of his symptoms. AR 24-25.

Regarding reason (1), ALJs may consider the lack of supporting evidence in evaluating pain testimony, but the "lack of medical evidence cannot form the sole basis for discounting pain testimony." Burch, 400 F.3d at 681. This Court, therefore, will consider the legal sufficiency of the ALJ's other three reasons; if these three reasons are legally sufficient, then the Court need not consider the lack of supporting evidence.

**1. Reason Two: Conservative Treatment.**

A condition with symptoms that can be adequately controlled with medication and conservative treatment cannot be the basis of a claim for disability benefits. Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008). An ALJ may discount a claimant's testimony regarding the severity of an impairment where the claimant has received conservative treatment. Parra, 481 F.3d at 751 (ALJ properly discredited testimony of disabling pain that was "treated with an over-the-counter pain medication"). This is particularly true where a treating physician recommended a more aggressive treatment, and the claimant rejected it. Molina, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" (quoting Tommasetti, 533 F.3d at 1039)).

In this case, the ALJ found as follows:

7

> The record also shows that the claimant has generally received mild and conservative treatment. During the course of treatment, the claimant was only given pain medication and one epidural injection in January 2014. [AR 164.] The record shows that the claimant was interested in physical therapy, but the record contains no evidence indicating the duration and frequency of any visits.

AR 25.

Plaintiff argues that his treatment has not been conservative, because he underwent spinal fusion surgery in August 2013, received an epidural steroid injection in January 2014, and received a "recommendation" for further surgery in September 2015. (JS at 7-8.)

While surgery is not conservative treatment, the ALJ was entitled to consider how Plaintiff treated his pain after his August 2013 surgery, since he testified that the surgery initially "helped" to the point where his pain symptoms were "minimal," but then his pain "gradually got worse." AR 38-39. The ALJ was entitled to consider the degree to which Plaintiff successfully treated his post-surgical pain symptoms with medication.

After receiving the injection in January 2014, he reported in February 2014 that gabapentin and ibuprofen relieve his pain after 45 minutes. AR 127. Consistent with this, in August 2014, Plaintiff told Dr. Price's office that his "pain medications generally help with symptoms," although he "still has occasional breakthrough pain." AR 323-24. He told Dr. Price he could walk a mile three days per week. AR 323. In August and October 2014, at follow-up appointments with Dr. Duncan, Plaintiff denied that his pain was "progressively getting worse" and characterized his right leg as experiencing "occasional … radicular symptoms but these are minimal and do not bother him very much." AR 342-43. At an appointment on April 2, 2015, Dr. Duncan discharged Plaintiff because, "At this point in time, the patient is only having minimal symptoms." AR 341.

8

Thus, from his August 2013 surgery through April 2015, the medical evidence supports the ALJ's finding that Plaintiff's back pain was adequately managed through a course of conservative treatment consisting of medication and one epidural injection.

About two months later, however, on June 16, 2015, Plaintiff asked his primary care physician Dr. Price for a "referral to ortho," reporting "continued low back pain, worse since having back surgery." AR 304. He was referred back to Dr. Duncan. AR 308. At the hearing, Plaintiff acknowledged that Dr. Duncan had not recommended surgery because he "wanted to run some further tests." AR 38. Plaintiff complained, "I kept on telling him about the pain on the right side and he hasn't done nothing else." AR 39.

Plaintiff argues that his treatment became non-conservative on September 23, 2015 (JS at 8), the date when Dr. Duncan wrote a progress note in response to this referral stating, "I have outlined the option of surgical treatment to the patient. He will think about this." AR 363. Plaintiff's counsel submitted this progress note after the September 8, 2015 hearing, but before the ALJ's December 14, 2015 decision. AR 30. Dr. Duncan scheduled a follow-up appointment with Plaintiff for two weeks later, i.e., in October 2015. AR 363. There is no evidence in the record concerning any subsequent appointments with Dr. Duncan. While Plaintiff submitted other proposed new evidence to the Appeals Council from 2016, he did not submit any additional records from Dr. Duncan. See AR 2.

The progress note reflecting that Dr. Duncan was willing to discuss with Plaintiff the "option" of further surgery and that Plaintiff would "think about" it does not constitute a medical "recommendation" by Dr. Duncan that additional surgery is necessary or the best course of treatment for Plaintiff's pain. The note contains no discussion of the risks or benefits of surgery, or Dr. Duncan's assessment of continuing with medication, starting physical therapy, or other options. Even considering the progress note, no evidence in the record shows that

Plaintiff received any post-surgical treatment for pain beyond medication and one injection.³ No evidence in the record shows that any doctor recommended a second surgery rather than continuing with conservative treatment. The ALJ did not err in finding Plaintiff's treatment history is conservative enough to be inconsistent with his claim to suffer pain so severe he must spend 70 percent of his waking hours lying down.⁴

### 2. Reason Three: Plaintiff's Inconsistent Statements.

The ALJ noted that in contrast with his claimed limitations, "during 2014, the claimant complained only of minimal symptoms." AR 25, citing AR 342-43. The cited records are two "progress notes" from Plaintiff's orthopedic surgeon, Dr. Duncan, stating as follows:

• 08/07/14: About a year-and-a-half following back surgery, Plaintiff reported his "leg pain is better" and he has "some pain in the back although it is not progressively getting worse." AR 343. Plaintiff appeared to be "mobile" and did not "appear to be in pain." Id. Plaintiff was instructed to obtain a follow up CAT scan of the lumbar spine. Id. Dr. Duncan concluded, "Overall, the patient appears to be doing quite well and appears to only have a limited amount of pain in the low back with much of his leg symptoms improved." Id.

• 10/02/14: Dr. Duncan reviewed the CAT scan which revealed

---

³ Plaintiff testified that he received post-surgical physical therapy, but there are no records from a physical therapist in the record. AR 38. In August 2014, Plaintiff told Dr. Price that he was interested in physical therapy (AR 323), but no records reflect that he ever scheduled any. See Burch, 400 F.3d at 681 (claimant's lack of motivation to seek physical therapy, even if she sought other treatment, was "powerful evidence" that pain was not as severe as alleged).

⁴ Plaintiff also implies, incorrectly, that the ALJ erred by not explicitly discussing Dr. Duncan's progress note. (See JS at 7); see also Bostwick v. Berryhill, 677 F. App'x 344 (9th Cir. 2017) (noting that "an ALJ need not discuss every single piece of evidence," where such evidence is "neither significant nor probative").

1  "questionable impingement on the right S1 screw." AR 342. When he discussed
2  this with Plaintiff, Plaintiff reported "he does have some occasional right leg
3  radicular symptoms but these are minimal and do not bother him very much." Id.
4  AR 342. Dr. Duncan scheduled a follow-up appointment in six months. Id.

At the follow-up appointment on April 2, 2015, Dr. Duncan discharged Plaintiff because, "At this point in time, the patient is only having minimal symptoms." AR 341.

About two months later, however, on June 16, 2015, Plaintiff asked his primary care physician Dr. Price for a "referral to ortho," reporting "continued low back pain, worse since having back surgery." AR 304. Plaintiff described his pain to Dr. Price as "6/10." AR 307. Plaintiff was referred to Dr. Duncan and advised to "continue current pain medications." AR 308. Plaintiff's medication list included baclofen (a muscle relaxant[5]), Neurontin/gabapentin (an anti-convulsant), and ibuprofen (a pain reliever). AR 306.

In July 2015, Plaintiff returned to Dr. Duncan, who noted that Plaintiff "continues to have pain in the right leg. He had an epidural injection [in January 2014] which helped some but did not completely relieve the symptoms on the right." AR 340, 346. Dr. Duncan scheduled another CAT scan of the lumbar spine to look for "possible foraminal stenosis or other disc protrusion on the right." Id.

The next progress note from Dr. Duncan dated September 23, 2015, states, "I have outlined the option of surgical treatment to the patient. He will think about this." AR 363.

Plaintiff argues that the ALJ failed to identify a true inconsistency, because when one considers all of Dr. Duncan's records in the context of the full record, they merely show that Plaintiff's symptoms improved, then worsened. (JS at 7.)

---

[5] Plaintiff started baclofen in November 2014 and stopped in November 2015. AR 299.

11

In fact, Plaintiff claimed in April 2014 that he was suffering constant pain so severe he could only walk 30 yards, stand for 45 minutes, and sit for 30 minutes, despite being a young man in his twenties. AR 128. This was inconsistent with telling Dr. Duncan in August 2014, October 2014, and April 2015 that his post-surgical pain symptoms were minimal and did not bother him very much. See AR 341-43.

Moreover, Plaintiff's testimony about when his condition worsened after surgery was inconsistent. Plaintiff testified that his surgery "helped a little bit, but "later on, the beginning of the year, that's when everything sort of started intensifying on the right side." AR 38. When asked if he received "any treatment for the symptoms [he was] having," he responded, "Yes, they gave me an epidural injection." Id. Plaintiff's only epidural injection occurred in January 2014. See AR 175-76. Long after this, in August 2014, October 2014, and April 2015, he told Dr. Duncan that his post-surgical pain symptoms were minimal and did not bother him very much. AR 341-43. At the hearing, he acknowledged that he told Dr. Duncan his symptoms were minimal, but then claimed "as time went on they slowly, gradually got worse." AR 39. In fact, Dr. Duncan recorded Plaintiff's symptoms as minimal in April 2015, and Plaintiff complained to Dr. Price just two months later in June 2015 that he needed an "ortho referral."

Thus, the ALJ's finding of inconsistency between Plaintiff's testimony and his statements to Dr. Duncan is supported by substantial evidence.

### 3. Reasons Four: Vagueness.

The ALJ found, "the claimant's description of symptoms has been quite vague and general, lacking the specificity which might otherwise make it more convincing. The claimant has not provided details regarding factors which precipitate the allegedly disabling symptoms, merely claiming that the symptoms are present constantly or all the time, and that he does nothing else but lay in bed and manage his pain." AR 25.

Plaintiff argues that the ALJ "fails to clearly identify how Perez's testimony is vague and general." (JS at 8.) The Commissioner counters that ALJs are "allowed to use such "ordinary techniques of credibility evaluation." (JS at 18); see also Tommasetti, 533 F.3d at 1040 (citing with approval ALJ's finding that claimant was a "vague witness" with respect to alleged period of disability and pain symptoms).

Here, the ALJ adequately explained what was vague about Plaintiff's testimony, in that he failed to provide details about factors that precipitate or exacerbate his pain. Plaintiff could not describe how he went from being able to work as a butcher to having disabling pain other than, "it might have been something I was born with because there was no accident or anything." AR 36. Plaintiff reported that his pain occurs "constantly" and lasts "all day," but also said in the same form that his pain is brought on by "getting up from a sitting position and out of bed," and that medicine relieves his pain. AR 127. He reported that he must stop his activities because of pain "all the time," but did not explain what activities he had tried to do and stopped because of pain. AR 129. Rather than trying to be active, he spent 70 percent of his time lying down. AR 39-40. When asked if he felt he must lie down during the day, he responded, "Yes, I do, because if not … my back feels fatigued." AR 39. When asked about his daily activities, he responded, "Nothing really," without any mention of loss of functioning from pain. Id. In fact, when asked if he could bend over halfway if he supported himself with, for example, a hand on a table, he claimed, "I might. I haven't tried it." AR 40.

Thus, the ALJ provided three clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

/ / /
/ / /
/ / /
/ / /

# V.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: April 16, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge